UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

KENNETH GRAHAM,

               Petitioner,

    v.

UNITED STATES OF AMERICA,

               Respondent.

Case #   12-CR-311
             19-CV-107

DECISION AND ORDER

## INTRODUCTION

Petitioner Kenneth Graham, proceeding *pro se*, filed a Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 ("Motion to Vacate"). ECF Nos. 152, 158-1, 159. Petitioner also filed several Motions to Expedite, ECF Nos. 175, 178, 183, 194, and a Motion to Supplement and/or Amend his Petition ("Motion to Amend"), ECF No. 189. For the reasons set forth below, the Motions to Expedite are DENIED as moot, the Motion to Amend is GRANTED, and the Motion to Vacate is DISMISSED.

## BACKGROUND

### I.    Procedural Background

In 2012, a Grand Jury issued a superseding indictment ("Superseding Indictment") charging Petitioner with one count of sex trafficking by force, fraud, or coercion ("Count One"), one count of sex trafficking of a minor by force, fraud, or coercion ("Count Two"), and one count of sex trafficking of a minor ("Count Three"). ECF No. 7. The Superseding Indictment alleged that Petitioner recruited, enticed, caused, forced, and/or coerced three victims to engage in acts of prostitution for his own financial gain. *Id*. During pre-trial negotiations and at trial, Petitioner was

1

represented by attorney Michael Deal. On January 17, 2013, Petitioner was found guilty of all three counts and ordered to forfeit $80,000. Jan. 17, 2013 Min. Entry; ECF No. 34.

Attorney Robert Convissar began representing Petitioner on May 28, 2013. He filed a motion for new trial on October 28, 2013, which was denied on March 12, 2015. ECF Nos. 84, 90. Petitioner was sentenced to thirty years, with fifteen years on Count One and fifteen years on Count Two, to be served consecutively, and ten years on Count Three, to be served concurrently with Counts One and Two. Oct. 25, 2015 Min. Entry. Petitioner appealed, and the Second Circuit affirmed Petitioner's conviction on December 7, 2017. ECF Nos. 109, 134. Petitioner filed the instant Motion to Vacate on January 16, 2019, an Amended Motion on February 19, 2019, and a Motion to Amend on September 23, 2020. ECF Nos. 152, 159, 189.

## II.    Factual Background

### A.    Count One

At trial, G.B., an adult victim, testified that she first met Petitioner for a commercial sex transaction and began a personal relationship with him. ECF No. 125 at 11. Petitioner subsequently asked her to work for him as a prostitute. *Id*. She testified that she saw seven or eight commercial sex clients a day and gave Petitioner the money from her appointments. *Id*. at 13–14, 18–19. G.B. understood that Petitioner used rental cars to drive her to appointments based on, among other things, the fact that the tags on the keys said "Budget" and "Enterprise," and she "could tell that they were rentals." *Id*. at 21. Petitioner admitted to driving G.B. to "hotels, residence, wherever she wanted me to take her." ECF No. 127 at 171.[1] Petitioner also provided G.B. with condoms.

---

[1] Buffalo Police Officer James Reese's testimony confirmed that Petitioner drove rental cars. He testified that on March 25, 2012, he responded to an "unwelcomed guest, threats, harassment" call. ECF No. 126 at 128. He determined that Petitioner was the subject of the call and was driving a rental car. *Id*. at 128–29. Maria Giardina also testified that she rented cars for Petitioner. ECF No. 125 at 146–49. Rental car employees also corroborated that Petitioner used rental cars. ECF No. 127 at 21–29. Petitioner admitted that he "occasionally" drove rental cars. ECF No. 128 at 7.

ECF No. 125 at 21. G.B. posted "most of" the Backpage.com advertisements herself but testified that Petitioner "likes ads certain ways" that he "always suggested . . . to do it a certain way." *Id*. at 62–63.

G.B. testified that Petitioner once took her to a commercial sex appointment even though she did not want to work and wanted to go home. *Id*. at 24. She was "so upset and mad" that she grabbed the steering wheel and tried to crash the car on an interstate highway, Interstate 90. *Id*. at 24–26. Petitioner pulled over, called her "all types of names," and ultimately took her to a hotel to schedule and conduct commercial sex appointments. *Id*. at 25. G.B. also testified that she once ran away from a hotel where she was working for Petitioner and caught a bus and train home. *Id*. at 27. By the time she got home, Petitioner was there waiting for her. *Id*. The two argued and Petitioner choked her, placing his hands on her throat and saying, "I'll kill you." *Id*. at 28. G.B.'s back and neck were scratched up and her neck was slightly bruised. *Id*. at 29–30. G.B. ran to her neighbor[2] and called the police.[3] *Id*. at 30–31. Meanwhile, Petitioner stole her laptop, keys, and two phones. *Id*. at 32–33.

G.B. testified that Petitioner once found her trying to take back some of her prostitution money, and he punched or pushed her with sufficient force that she "left [her] feet" and "flew." *Id*. at 48–49. Later that same day, while Petitioner and G.B. were entering a vehicle, he threw a cell phone that bounced off the window, hitting G.B. in the face, referred to G.B. as a "stupid bitch," and asked why she would steal "his" money. *Id*. at 50.

---

[2] The neighbor confirmed that G.B. "had some marks on her and she had a laceration on her arm. She was bleeding." ECF No. 125 at 88.

[3] A Buffalo police officer who responded to the incident further confirmed that G.B. had a "knot on her forehead" and "bruising on her back." ECF No. 125 at 99.

G.B. testified that, in July or August 2012, after she had not seen Petitioner for several months, she ran into him and "he offered to take me home." *Id*. at 56–58. However, instead of taking her home, Petitioner told G.B. he wanted her to "hit a lick or to make some money real quick," which she understood as seeing a commercial sex client. *Id*. at 59. G.B. "didn't want to," but testified that: "I really didn't think I had a choice when I said take me home and we're going the opposite way of my house." *Id*. Petitioner took her to Orchard Park for a commercial sex appointment, where she made $280, $40 of which Petitioner allowed her to keep. *Id.* at 60–61. The experience made her feel "used and worthless." *Id*. at 61.

B.    *Count Two*

A second victim, J.B., who was a minor during the time of her involvement with Petitioner, testified that she met Petitioner through G.B. ECF No. 127 at 49, 53. J.B. testified that she began dating Petitioner and had sex with him. *Id*. at 55–56. She learned that Petitioner was a pimp when he showed her how to "turn a trick" in the car by giving her money and telling her to perform oral sex on him. *Id*. at 56–58. J.B. testified that she told Petitioner that she was, at that time, sixteen years old and that he had also seen her high school ID card. *Id*. at 58–62. J.B. began working for Petitioner; he drove her to commercial sex appointments and gave her condoms, *id*. at 62–63, and she gave the money she earned to him, *id*. at 63–64, 106. J.B. testified that Petitioner posted advertisements on Backpage.com and gave her a "throw-away phone" to use for commercial sex appointments. *Id*. at 65–70, 106. He also paid for hotel rooms for her appointments, and she had approximately five appointments "like every day." *Id*. at 74–75.

After about a month, J.B. told Petitioner she wanted to stop engaging in prostitution and he laughed at her. *Id*. at 75–76. Once, at the Comfort Inn in Buffalo, J.B. refused to see a client. *Id*. at 77. Petitioner hit her in the face "numerous times," for "what felt like forever," while calling

her a "dumb bitch." *Id*. at 77–79. Despite this, J.B. saw commercial sex clients "if not that day, then the next day." *Id*. at 79. On another occasion, Petitioner hit J.B. while brandishing a handgun. *Id*. at 107–09. J.B. tried to leave Petitioner numerous times, including once when she hopped out of a window of the Red Roof Inn and called a cab. *Id*. at 79–80. She testified about how she left Petitioner to live with her sister in Albany. *Id*. at 81–88. Under the guise of returning her belongings to her, Petitioner drove to Albany, and tricked and coerced J.B. to come back to Buffalo with him. *Id*. at 88–93. J.B. also testified regarding hiding from Petitioner in a friend's basement in the dark. *Id*. at 94–101.

    *C.*    *Count Three*

A minor victim, "J.O.," testified via closed circuit television that she met Petitioner when she was sixteen when he contacted her for a commercial sex appointment at the Millennium Hotel in Cheektowaga. ECF No. 126 at 22–23. After the appointment, Petitioner took the money he had paid her and ran off. *Id*. Later, Petitioner contacted her and asked her to work as a prostitute for him. *Id*. at 23–25. She agreed, with the understanding that Petitioner would get sixty percent of her earnings. *Id*. at 25–27. She testified that Petitioner "posts girls on Backpage[.com] and does it himself basically," *id*. at 23, and posted the ads for J.O., *id*. at 27. Petitioner drove her to commercial sex appointments and provided her with condoms. *Id*. at 27–28. J.O. testified that she saw commercial sex clients at the Red Roof Inn in Amherst, New York,[4] and that Petitioner paid for the rooms. *Id*. at 29.

    *D.*    *Other Testimony and Motions Raised at Trial*

Special Agent Patricia Calleri also testified briefly during the trial. ECF No. 127 at 4. Among other things, Calleri testified that she was the case agent in the case, that condoms are

---

[4] Numerous officers testified to the involvement of G.B., J.B., and J.O. in Backpage.com stings at hotels in Amherst and Cheektowaga, New York in May, June and August 2012. ECF No. 124 at 71–120.

manufactured in Virginia by Trojan and in China by Durex, that no business manufactures condoms in New York, and that Petitioner used certain phone numbers in his prostitution business. *Id*. at 4–8. Defense counsel objected to Calleri's testimony about certain records from Backpage.com, banking institutions, and rental car companies as hearsay. *Id*. at 9–10. After argument, the trial court sustained the objection, and Calleri was excused from the stand. *Id*. at 10–16. Calleri did not return to the stand until the forfeiture portion of the proceedings. ECF No. 129 at 11.

At the close of the prosecution's case, defense counsel moved for acquittal, pursuant to Rule 29(a), of the Federal Rules of Criminal Procedure, because "the evidence of venue is insufficient." ECF No. 127 at 148. The trial court heard oral argument, *id*. at 148–58, and denied the Motion, *id*. at 158–60.

Petitioner took the stand and admitted that he lied on an apartment application for student housing both by falsely claiming he was a student at Erie Community College and by identifying his mother as a guarantor though she had passed way ten months earlier. ECF No. 128 at 35–37. He denied posting Backpage.com advertisements despite multiple advertisements being charged to his credit cards. *Id*. at 28–34.

## III. Motion for a New Trial

On October 28, 2013, while represented by Mr. Convissar, Petitioner filed a Motion for a New Trial. ECF No. 60. Petitioner argued that his trial counsel, Mr. Deal, had been ineffective "in the investigation, handling and conduct of [Petitioner's] defense and the trial herein and his failure to make timely post-trial motions." ECF No. 60 at 3. Specifically, Petitioner challenged Mr. Deal's failure to understand and advise him about the impact upon his case of Rule 412 of the Federal Rules of Evidence, which forbids the introduction of specific evidence of a sex offense victim's

other sexual behavior or sexual predisposition, except in specific limited circumstances. *Id*. at 5–9. Mr. Deal filed an affidavit refuting Petitioner's allegations. ECF No. 73.

The trial court denied Petitioner's Motion for a New Trial, finding "that the manner in which [trial] counsel handled the evidentiary issues created by Rule 412, both prior to and during the trial, did not fall below an objective standard of reasonableness." ECF No. 90 at 10. The trial court found that, even if Petitioner could show Mr. Deal's assistance fell below the standard of reasonableness, he could not establish he was prejudiced by Mr. Deal's deficient performance. *Id*. at 13–14. Additionally, the trial court noted:

> [T]here was overwhelming, credible and persuasive evidence of [Petitioner's] guilt presented over the course of the trial. All three victims, two of whom were minors during the time period set forth in the Superseding Indictment, credibly testified as to [Petitioner's] sex trafficking activities and the manner in which he recruited, enticed, encouraged, coerced, forced or persuaded each of them to engage in prostitution for his own financial gain. There was evidence that [Petitioner] advertised as to the victim's services on the internet, that he drove the victims to meet clients and arranged for hotel rooms, and that he took money that the victims received from clients for prostitution activities. Two of the victims testified as to physical altercations with [Petitioner]. In light of the testimony presented at trial, the Court finds that even if defense counsel had successfully made a motion to allow evidence of the victims' prior or subsequent prostitution activities in evidence, this evidence would not have persuaded the jury that [Petitioner] did not coerce, force or entice these women to engage in prostitution. Moreover, this type of evidence certainly would not have persuaded the jury that [Petitioner] did not engage in sex trafficking of a minor, which does not require the force, fraud or coercion of the victim. It is also significant to note that there was testimony that [Petitioner] met at least one of the victims when he answered her advertisement for prostitution services. In light of the fact that some evidence of a victim's prior prostitution was introduced to the jury, who ultimately found [Petitioner] guilty of all three counts of sex trafficking, there is no reasonable basis to conclude that additional evidence in this regard would have had any effect whatsoever on the verdict.

*Id*. at 15–16.

## IV.    Appeal

On November 17, 2016, Petitioner filed an appeal raising seven issues:

1. *Insufficient Evidence*. There was insufficient evidence of (1) Petitioner's participation in a venture as to all three counts and (2) impact on interstate commerce as to Count One.

2. *Constructive Amendment*. The indictment was constructively amended as to Count Two and Count Three when the Court instructed the jury it could convict based on Petitioner's reasonable opportunity to observe the victims, who were minors, though this theory was not articulated in the indictment.

3. *Erroneous Jury Charge*. The trial court failed to charge the jury that Petitioner must know or recklessly disregard that the victims would be caused to engage in commercial sex activity.

4. *Closed Circuit Testimony*. The trial court abused its discretion when it allowed J.O. to testify by closed circuit television.

5. *Rule 412*. The trial court abused its discretion by prohibiting Petitioner from presenting evidence of additional prostitution by the victims.

6. *New Trial Motion*. The trial court abused its discretion when it denied Petitioner's Motion for a New Trial.

7. *Improper Sentence on Count Two*. The trial court improperly concluded that the mandatory minimum for Count Two was fifteen years, involving force, fraud or coercion, when the jury was not properly charged on this point.

ECF No. 173-1.

The Second Circuit affirmed Petitioner's conviction on December 6, 2017. ECF No. 173-2. Specifically, the Second Circuit found sufficient evidence of impact on interstate commerce as to all counts, finding that conduct involved was "inherently commercial" and that all three counts

involved internet advertisements, condoms, hotels, and rental cars. *Id*. at 5. And, with respect to Petitioner's Rule 412 argument, the Second Circuit found that the victims' prior prostitution came out during their testimony and was subject to cross-examination such that the trial court's Rule 412 ruling had no prejudicial impact on Petitioner. *Id*. at 11–12.

## DISCUSSION

### I.    Motion to Amend the Amended Motion to Vacate

Petitioner moves to supplement or amend his Amended Motion to Vacate "in light of [*United States v. Purcell*, 967 F.3d 159 (2d Cir. 2020)]."[5] ECF No. 189 at 1. In his Motion to Amend, Petitioner raises additional ineffective assistance of trial and appellate counsel claims based on 1) his trial counsel's failure to renew a Rule 29(a) motion at the close of evidence to challenge venue on Count One and 2) his appellate counsel's failure on appeal to challenge venue on Count One. *Id*. at 2, 8. Specifically, Petitioner claims that, as to Count One, there was insufficient evidence presented at trial that the underlying sex trafficking allegations and events took place in the Western District of New York. *Id*. at 3–4. He states that, "towns such as Orchard Park or Amherst are all over New York State and the country," and so, "to say [these towns] are located within the Western District [of New York] will only be speculation." *Id*. at 6, 8.

Because a motion to amend is not a successive habeas petition (motion to vacate), the standard for granting or denying a motion to amend is governed by Federal Rule of Civil Procedure 15(a). *Littlejohn v. Artuz*, 271 F.3d 360, 363 (2d Cir. 2001). The Second Circuit has said,

> The application of Rule 15(a) is supported by 28 U.S.C. § 2242, which states that a petition for habeas corpus "may be amended or supplemented as provided in the rules of procedure applicable to civil actions," and Rule 11 of the Rules Governing Section 2254 Cases which provides that the Federal Rules of Civil Procedure, "to the extent that they are not inconsistent with these rules, may be applied, when appropriate, to petitions filed under these rules."

---

[5] While Petitioner cites to "*United States v. Purcell*, S.D.N.Y. 2020," the Court presumes he intended to refer to the Second Circuit opinion.

*Id*. While specifically applied to § 2254 habeas petitions, the reasoning "clearly encompasses § 2255 motions as well." *Ching v. United States*, 298 F.3d 174, 177 n.2 (2d Cir. 2002) (citing *Littlejohn*, 271 F.3d at 363; *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 816 (2d Cir. 2000)).

Under Rule 15(a), leave to amend "shall be freely granted when justice so requires." Fed. R. Civ. P. 15(a). However, "a district court may properly deny leave when amendment would be futile." *Jones v. N.Y. State Div. of Mil. & Naval Affs.*, 166 F.3d 45, 50 (2d Cir. 1999). Amendments may not be made after the statute of limitations has run unless the amendment relates back to the date of the original pleading. Fed. R. Civ. P. 15(c). In federal habeas proceedings, "relation back depends on the existence of a common core of operative facts uniting the original and newly asserted claims," *Mayle v. Felix*, 545 U.S. 644, 659, 664 (2005) (internal quotation marks omitted), and is unavailable merely because the proposed claims relate to the same trial, conviction, or sentence as the original petition. *See id*. at 662–64.

Here, the one-year statute of limitations under 28 U.S.C. § 2255(f) has long since expired, and while the ineffective assistance of trial and appellate counsel claims are based on the same factual evidence—that the evidence of venue was insufficient—they arguably differ in "time and type" from the claims raised in the Motion to Vacate. *See, e.g.*, *Herb v. Smith*, No. 14-CV-4405, 2017 WL 1497936, at *5 (E.D.N.Y. Apr. 25, 2017) (finding no "clear connection to the original pleading" where original claims referred to events at criminal trial and the proposed amended claims addressed issues with criminal appeal); *Gibson v. Artus*, 407 F. App'x 517, 519 (2d Cir. 2010) (rejecting argument that new claims relate back to original claims simply because all claims involve the same grand jury proceedings); *Pinero v. Greiner*, 519 F. Supp. 2d 360 (S.D.N.Y. 2007) (finding that an amendment alleging ineffective assistance of appellate counsel did not relate back to the original petition, which alleged ineffective assistance of trial counsel).

10

"[T]he one year deadline the AEDPA imposed on the filing of section 2255 petitions . . . established a statute of limitations and is not a jurisdictional bar." *Green v. United States*, 260 F.3d 78, 82 (2d Cir. 2001). Thus, "district courts are permitted, but not obliged, to consider, *sua sponte*, the timeliness of a . . . habeas petition," *Day v. McDonough*, 547 U.S. 198, 209 (2006), provided the parties are given "fair notice and an opportunity to present their positions." *Id*. at 210. "Further, the court must assure itself that the petitioner is not significantly prejudiced by the delayed focus on the limitation issue, and determine whether the interests of justice would be better served by addressing the merits or by dismissing the petition as time barred." *Id*. (internal quotation marks and footnote omitted). In light of the fact that Respondent has not asserted the statute of limitations as a defense, and given the length of time this matter has been pending, the Court finds that the interests of justice and judicial efficiency would be better served by addressing the proposed claims on the merits. Accordingly, Petitioner's Motion to Amend the Motion to Vacate is granted.

## II.    The Motion to Vacate

§ 2255 authorizes a federal prisoner to challenge the legality of his sentence on the ground that the sentencing court "was without jurisdiction to impose [the] sentence" or that the sentence itself "was imposed in violation of the Constitution or laws of the United States," was "in excess of the maximum authorized by law" or is "otherwise subject to collateral attack." 28 U.S.C. § 2255. A § 2255 petition must allege: (1) a constitutional error; (2) a lack of jurisdiction on the sentencing court; or (3) an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice. *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995). The Court can dismiss a § 2255 proceeding without conducting a hearing if the motion and the record "conclusively show" that the movant is not entitled to relief. 28 U.S.C. § 2255. However, if the motion and record reveal that the movant may be entitled to some form of relief,

this Court must hold an evidentiary hearing on the potentially meritorious arguments. *See Ciak v. United States*, 59 F.3d 296, 297 (2d Cir. 1995). Inasmuch as Petitioner is proceeding *pro se*, this Court will construe the Motion to Vacate liberally. *See Billy-Eko v. United States*, 8 F.3d 111, 117 (2d Cir. 1993) (recognizing a "judicial interest in interpreting *pro se* pleadings liberally and in the interests of fairness to *pro se* litigants").

Petitioner raises the following claims: (1) that his due process right to a fair and impartial trial was violated because he was not given an opportunity to cross-examine Special Agent Patricia Calleri; (2) ineffective assistance of trial counsel during plea bargaining and at trial; (3) ineffective assistance of appellate counsel; and (4) actual innocence as to Count One. ECF No. 152. Respondent argues the Motion to Vacate should be summarily rejected without a hearing because there was overwhelming, credible, and persuasive evidence of Petitioner's guilt presented at trial and because Petitioner failed to establish prejudice—*i.e.* any alleged error would not have resulted in a different result at trial or on appeal. ECF No. 173. Petitioner's Motion to Amend the Motion to Vacate raises an additional claim of ineffective assistance of trial and appellate counsel. ECF No. 189.

A.    Confrontation Clause (Ground One)

Petitioner claims that his due process rights were violated because he had no opportunity to cross-examine Special Agent Calleri at trial. Respondent argues that this claim is procedurally defaulted because Petitioner failed to raise this claim at trial or on appeal, but that the underlying argument can be addressed as ineffective assistance of counsel claims. ECF No. 173 at 18.

A petitioner is generally barred from collaterally challenging a conviction under § 2255 on a ground that he failed to raise on direct appeal. *Zhang v. United States*, 506 F.3d 162, 166 (2d Cir. 2007). There are two exceptions to the procedural default rule. First, if the petitioner establishes

(a) cause for the procedural default and ensuing prejudice or (b) actual innocence. *See Bousley v. United States*, 523 U.S. 614, 622 (1998). Second, an exception exists for claims of ineffective assistance of counsel. *Massaro v. United States*, 538 U.S. 500, 504 (2003). While "[n]egligence on the part of a prisoner's postconviction attorney does not qualify as 'cause,'" *Maples v. Thomas*, 565 U.S. 266, 280 (2012), "[i]neffective assistance of appellate counsel may constitute cause for a procedural default," *Xiang v. United States*, No. 09-CV-7579, 2010 WL 3155052, at *4 (S.D.N.Y. Aug. 6, 2010).

Thus, because Petitioner did not raise this due process claim on appeal, he is procedurally barred from raising this claim collaterally in a § 2255 motion, unless he can show "cause" for failing to raise the claim and resulting "prejudice," or that he is "actually innocent." *See Bousley*, 523 U.S. at 622; *United States v. Munoz*, 143 F.3d 632, 637 (2d Cir. 1998) ("A motion under § 2255 is not a substitute for an appeal."). Although the Motion to Vacate fails to explicitly address this issue, presumably, Petitioner's proffered "cause" is his allegation that trial and appellate counsel were ineffective for failing to raise the due process issue at trial or on appeal. The merits of his due process claim, therefore, will only be addressed to the extent that they bear on Petitioner's ineffective assistance claims. As discussed below, Petitioner's ineffective assistance of counsel claims are without merit and therefore do not constitute cause to excuse Petitioner's procedural default.

B.    *Ineffective Assistance of Trial and Appellate Counsel (Grounds Two and Three, and Motion to Amend)*

Petitioner claims he received ineffective assistance of trial and appellate counsel. Specifically, Petitioner claims trial counsel was ineffective 1) for not moving for a mistrial on the additional ground that he was not given an opportunity to cross-examine Special Agent Calleri; 2) during plea bargaining because Petitioner would have accepted a plea had counsel been aware of

and explained that Rule 412 forbade his planned defense; 3) "for not knowing the very important reasonable doubt standard in federal court"; and 4) for making negative statements about Petitioner to the jury. *See generally* ECF Nos. 152, 158-1, 159. Petitioner claims appellate counsel was ineffective for, like trial counsel, failing to make an argument on appeal that Petitioner did not have an opportunity to cross-examine Special Agent Calleri. ECF No. 152 at 23; ECF No. 158-1 at 18. In his Motion to Amend, Petitioner argues that 1) trial counsel was ineffective "for not renewing the Rule 29(a) motion" at the close of all evidence; and that 2) in light of *United States v. Purcell*, 967 F.3d 159 (2d Cir. 2020), trial and appellate counsel were ineffective for failing to challenge venue as to Count One. ECF No. 189 at 1, 8. In their response to the Motion to Vacate, Respondent argues that all of Petitioner's ineffective assistance of trial and appellate counsel claims fail because he has not and cannot demonstrate prejudice. ECF No. 173 at 18–22.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court adopted a two-part standard for evaluating claims of ineffective assistance of counsel, which the Second Circuit has held applies equally in the appellate context. *See, e.g.*, *Hemstreet v. Greiner*, 491 F.3d 84, 89 (2d Cir. 2007) (*Strickland* applies to habeas claims asserting appellate counsel's ineffectiveness). "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687–88. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. This additional "prejudice" requirement was based on the conclusion that "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691.

1.    Trial and Appellate Counsels' Failure to Raise Issue Relating to Cross-Examination of Special Agent Calleri

Petitioner argues that both trial and appellate counsel rendered constitutionally ineffective assistance because neither attorney, at trial nor on appeal, raised the issue that Petitioner was denied the opportunity to cross-examine Special Agent Calleri. ECF No. 152 at 6. Petitioner claims that, as the case agent, Calleri had "overall primary responsibility," and was "the lead investigator in my investigation and her detail included conducting interviews, obtaining evidence, maintaining evidence, and documenting reports associated with investigation." *Id*. Respondent argues that even if trial and appellate counsel were objectively deficient for failing to cross-examine Calleri or make motions related to that failure, Petitioner has not explained how cross-examination of Calleri would have led to a different result at trial. ECF No. 173 at 20.

The Confrontation Clause "provides two types of protection for a criminal defendant: the right physically to face those who testify against him, and the right to conduct cross-examination." *Pennsylvania v. Ritchie*, 480 U.S. 39, 51 (1987). Because "[c]ross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested," *Davis v. Alaska*, 415 U.S. 308, 16 (1974), "[t]he opportunity for cross-examination, protected by the Confrontation Clause, is critical for ensuring the integrity of the fact-finding process." *Kentucky v. Stincer*, 482 U.S. 730, 736 (1987). "[T]he Clause's ultimate goal is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee." *Crawford v. Washington*, 541 U.S. 36, 61 (2004). "It commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination." *Id*.

At trial, Calleri testified that she was the case agent in the case, that condoms are manufactured in Virginia by Trojan and in China by Durex, that no business manufactures condoms in New York, that the Petitioner used certain phone numbers in his sex-trafficking or

prostitution dealings, and that she seized several phones from Petitioner. ECF No. 127 at 4–8. Mr. Deal objected to Calleri testifying about phone numbers provided by G.B. as hearsay, which was overruled. *Id*. at 6–8. Calleri also testified about certain records from Backpage.com, banking institutions, and rental car companies. *Id*. at 8–9. Mr. Deal objected to Calleri's "interpretation of any of the records" as hearsay. *Id*. at 9–10. The jury was excused from the courtroom, the trial court heard argument and sustained Mr. Deal's objection. *Id*. at 10–15. Specifically, the trial court suggested that the prosecution call other witnesses with personal knowledge before continuing that line of questioning with Calleri and excused Calleri from the witness stand. *Id*. at 15. When the jury returned to the courtroom, the trial court stated that Calleri's testimony would "be on hold for the time being," and instructed the prosecution to call its next witness. *Id*. at 16. Calleri did not return to the stand until the forfeiture portion of the proceedings. ECF No. 129 at 11.

To the extent that Petitioner claims his trial attorney rendered ineffective assistance because he failed to cross-examine Calleri, the Court finds that Petitioner has not established that Mr. Deal's performance was deficient. Indeed, Mr. Deal objected to the admissibility of Calleri's testimony solicited by the prosecution and the objection was properly sustained by the trial court. While the trial court did not fully explain to the jury that the objection was sustained, Mr. Deal's objection led to a favorable ruling and to the trial court dismissing Calleri as a witness until a later time. ECF No. 127 at 16.

Additionally, even if Petitioner could show that his trial or appellate attorneys rendered ineffective assistance because Mr. Deal failed to preserve for appeal and Mr. Convissar failed to raise on appeal a confrontation clause claim, Petitioner has not shown prejudice resulting from either attorneys' allegedly deficient performance. Calleri's testimony relating to manufacturing condoms, records from Backpage.com, and banking institutions and rental car companies was, at

best, cumulative. Indeed, other witnesses at trial testified to these same facts, including, for example, the managers of Avis Rent a Car and Budget Rent a Car, ECF No. 127 at 21–30, and the custodian of records from Backpage.com, ECF No. 125 at 125–30. Additionally, in its decision denying Petitioner's motion for a new trial, the trial court found there was "overwhelming, credible and persuasive evidence of [Petitioner's] guilt" including "evidence that [Petitioner] advertised as to the victims' services on the internet, that he drove the victims to meet clients and arranged for hotel rooms, and that he took money that the victims received from clients for prostitution activities." ECF No. 90 at 15–16. And, on appeal, the Second Circuit found sufficient evidence of impact on interstate commerce, specifically that Petitioner's conduct was "inherently commercial" and that all three counts involved "the use of internet advertisements, condoms, hotels, and rental cars." ECF No. 173-2 at 4–5. As such, Petitioner's ineffective assistance of trial and appellate counsel claims are without merit and cannot constitute cause to excuse his procedural default.

2.      Trial and Appellate Counsels' Failure to Challenge Venue as to Count One

In his Motion to Amend, Petitioner argues that trial counsel was ineffective for failing to renew his Rule 29(a) Motion at the close of evidence and, specifically, for failing to challenge venue as to Count One. ECF No. 189 at 3–6. Similarly, Petitioner argues that appellate counsel failed to challenge venue as to Count One on appeal. *Id.* at 8.

"Both the Sixth Amendment and Federal Rule of Criminal Procedure 18 require that defendants be tried in the district where their crime was 'committed.'" *United States v. Ramirez*, 420 F.3d 134, 138 (2d Cir. 2005). The government bears the burden of proving venue by a preponderance of the evidence. *United States v. Tzolov*, 642 F.3d 314, 318 (2d Cir. 2011). "Venue is proper only where the acts constituting the offense—the crime's 'essential conduct elements'— took place." *United States v. Ramirez*, 420 F.3d 134, 138 (2d Cir. 2005). Venue is "not proper in a district in which the only acts performed by the defendant were preparatory to the offense and

not part of the offense." *United States v. Beech–Nut Nutrition Corp.*, 871 F.2d 1181, 1190 (2d Cir. 1989).

In his Rule 29(a) motion, brought at the close of the prosecution's case, Mr. Deal argued for dismissal of all counts, as a preliminary point, because "the evidence of venue [wa]s insufficient." ECF No. 127 at 148. The Court heard oral argument, *id*. at 148–58, and denied the motion, *id*. at 158–60. The defense case consisted only of calling the Petitioner and recalling a single witness, the manager of the Red Roof Inn in Amherst, New York, to testify. Mr. Deal's failure to renew the motion at the close of the defense's case does not amount to deficient performance. *United States v. Finley*, 245 F.3d 199, 204 (2d Cir. 2001) (failure of defense counsel to renew a motion for acquittal at the close of defendant's case did not amount to inadequate representation); *Kergil v. United States*, No. 12-CR-152, 2019 WL 3940621, at *13 (S.D.N.Y. Aug. 1, 2019) (the failure to renew a Rule 29 motion at the close of trial does not constitute ineffective assistance of counsel where the Court has previously denied the motion at the close of the Government's case). Given the weight of the evidence presented at trial, the Court finds that Mr. Deal "acted within the wide range of reasonable professional assistance when he did not renew the Rule 29 motion." *Handy v. United States*, No. 15-CV-392, 2016 WL 3211806, at *3 (D. Conn. June 9, 2016) (internal quotation marks omitted). Additionally, Petitioner has failed to show that he suffered any prejudice as a result of Mr. Deal's failure to renew the Rule 29(a) motion challenging venue.

As to Petitioner's claim of ineffective assistance of appellate counsel for failure to challenge venue on appeal, the Court finds this claim must be dismissed as well. In his Motion to Amend, Petitioner states that G.B. testified that Petitioner responded to an ad on Backpage.com and met G.B. in Amherst, New York for a date. ECF No. 189 at 3. G.B. testified that she lived "in

the Lovejoy area of Buffalo." *Id*. G.B. also testified that Petitioner took her to a hotel along Interstate 90, and that when she left, she "caught a bus and a train home [and] when she got there [Petitioner] was already waiting for her." *Id*. Petitioner argues that G.B. did not, however, "make clear that she saw and service[d] client[s] within the Western District of New York," or "mention a hotel or client's home that was within the Western District of New York." *Id*. at 6. Petitioner concludes that, because "G.B. never stated we were in the Western District of New York" and did not testify as to the name or location of the hotels and cities where she met clients, venue as to Count One was not proper. *Id*. at 3–6. Petitioner suggests that "towns such as Amherst and Orchard Park are all over New York State and the country," and to say that these towns "are located within the Western District of New York will only be speculation." *Id*. at 6, 8.

Petitioner urges the Court to consider this claim "in light of [*United States v. Purcell*, 967 F.3d 159 (2d Cir. 2020)]." *Id*. at 1. However, the Court finds Petitioner's arguments unavailing; his reliance on Purcell is misplaced. In *Purcell*, the Second Circuit found that venue did not exist in the Southern District of New York where the *only* acts the defendant performed were preparatory to the offense, such as phone calls made to an alleged victim while he was driving through the Southern District of New York, and were not actually part of the offense. 967 F.3d at 187–90. Additionally, venue did not exist in the Southern District of New York where there was *no evidence* indicating how or whether an alleged victim traveled to or through the Southern District of New York in order to engage in prostitution. *Id*. at 188–89.

Here, G.B. testified that she lived in the "Lovejoy area" of Buffalo, New York. ECF No. 125 at 3, 23. She first met Petitioner in Amherst, New York. *Id*. at 4. She testified once while Petitioner drove her to a "working appointment" via Interstate 90, she told him she "didn't want to work that day." *Id*. at 24–25. She wanted to go home, but Petitioner drove her to the hotel where

she scheduled and later carried out the appointments. *Id*. She also testified that, on another occasion, she ran into Petitioner while she was at a store on Broadway, and he offered to take her home. *Id*. at 57. Instead of driving her home, Petitioner drove her to Orchard Park to see a client. *Id*. at 58–61. G.B. testified that they drove "on Walden [Avenue] and took the Thruway," to "hick a lick or to make some money real quick," which she understood to me seeing a commercial sex client. *Id*. She "didn't want to," but Petitioner took to her to Orchard Park, where she met and had sex with someone for money. *Id*. at 61. Petitioner "took most of [that money]." *Id*. at 61. The Court asked if G.B. had gone "to some hotel somewhere in Orchard Park?" *Id*. at 62. G.B. responded that "it was a client's house," and that Petitioner waited for her in the car. *Id*. Even if it was not expressly stated, it is a reasonable inference from G.B.'s testimony that she was referring to the city of Buffalo, the town of Amherst, and the village of Orchard Park located in Erie County within the Western District of New York.

Even if Petitioner could show that Mr. Convissar rendered ineffective assistance of counsel because he did not challenge venue as to Count One on appeal, Petitioner has not shown prejudice resulting from any alleged deficient performance. Accordingly, Petitioner's ineffective assistance of trial and appellate counsel claims must be dismissed.

### 3.    Trial Counsel and Rule 412 During Plea Negotiations

Petitioner argues trial counsel was ineffective before trial and during plea negotiations. Petitioner states that, when the government offered him a plea deal, he "turned it down because at the time I was under the impression I could present several forms of evidence in my defense," including the victims' sexual behavior. ECF No. 152 at 17. Petitioner claims that he found out "minutes before trial," that Rule 412 forbids the introduction of specific evidence of a sex offense victim's other sexual behavior or sexual predisposition, except in specific limited circumstances. *Id*. at 18. Petitioner alleges that Mr. Deal "never knew about Rule 412," and that had Petitioner

known the evidence would be excluded, he "would have t[aken] the plea when it was offered because I would have kn[own] I would not have had a defense." *Id*. Respondent argues this claim is barred because it was previously raised and rejected by the trial court when it denied Petitioner's Motion for a New Trial, ECF Nos. 60, 90, and was raised and rejected by the Second Circuit on appeal, ECF No. 173-1 at 58–62; ECF No. 173-2 at 11–12. ECF No. 173 at 19.[6]

Indeed, "[t]he law of the case ordinarily forecloses relitigation of issues expressly or impliedly decided by the appellate court." *United States v. Quintieri*, 306 F.3d 1217, 1229 (2d Cir. 2002). Accordingly, "section 2255 may not be employed to relitigate questions which were raised and considered on direct appeal," *Cabrera v. United States*, 972 F.2d 23, 25 (2d Cir. 1992), and this claim must be denied.

4.    Trial Counsel's Inarticulate Recitation of the Reasonable Doubt Standard and Negative Remarks to Jury About Petitioner

Petitioner claims that Mr. Deal was ineffective because he inaccurately defined reasonable doubt in his opening statement and he made prejudicial statements about Petitioner to the jury. ECF No. 152 at 19–22. Specifically, Petitioner states that Mr. Deal did not know the correct reasonable doubt standard used in federal court, *id*. at 19–20, and that his negative statements about Petitioner at trial "cause[d] the jury to perceive [him] in a different light than they previously had," *id*. at 21. Respondent contends that Petitioner fails to establish how Mr. Deal's imprecise articulation of the reasonable doubt standard and recognition that the jury might view Petitioner as a "terrible person" resulted in any prejudice. ECF No. 173 at 22.

---

[6] The trial court found that Mr. Deal's handling of "the evidentiary issues created by Rule 412, both prior to and during the trial, did not fall below an objective standard of reasonableness." ECF No. 90 at 10. The Second Circuit stated that the victims' prior prostitution was revealed during their testimony, was subjected to cross-examination, and found that Petitioner "ultimately suffered no harm from [the district court's] ruling." ECF No. 173-2 at 11–12.

The Second Circuit has held that "an incompetent summation can demonstrate ineffective assistance of counsel." *United States v. Jordan*, 927 F.2d 53, 57 (2d Cir. 1991) (citing *Matthews v. United States*, 449 F.2d 985, 987–88 (D.C. Cir. 1971)). However, "counsel's competence is presumed and the habeas petitioner must rebut that presumption." *Rodriguez v. United States*, No. 14-CV-4628, 2017 WL 6404900, at *25 (S.D.N.Y. Dec. 13, 2017) (citing *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986)), *aff'd*, 767 F. App'x 160 (2d Cir. 2019); *see also Strickland* 466 U.S. at 689 (there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy"). Accordingly, "[t]he *Strickland* standard is rigorous, and the great majority of habeas petitions that allege constitutionally ineffective counsel founder on that standard." *Rodriguez*, 2017 WL 6404900, at *25 (brackets in original) (quoting *Lindstadt v. Keane*, 239 F.3d 191, 199 (2d Cir. 2001)).

In his opening statements, Mr. Deal stated:

> The government has to prove his guilt beyond a reasonable doubt. And when you hear the evidence that comes in this case from G., J. and J., I think you'll find that there are reasonable suspicions about their credibility. And that reasonable suspicion, when you go back and deliberate you can base reasonable doubt on.

ECF No. 124 at 45. Prior to closing statements, the trial court specifically referred to this part of Mr. Deal's opening statement (above) and cautioned him:

> I don't know where you came up with that phrase. It's not an accurate statement of the law. And if you start changing the definition of reasonable doubt, I'm going to stop you in front of the jury. . . . [ ] many times lawyers come over here and they twist and turn that reasonable doubt standard into statements that are just not accurate and not a statement of the law. So I want to put you on notice right now. . . . What you said there is not accurate.

ECF No. 80 at 2–3. Petitioner argues Mr. Deal's incompetence is inexcusable because the reasonable doubt standard "is the most important thing a defense attorney needs to know in a

criminal trial because it's the very thing that will decide your client's guilt or innocen[ce]." ECF

No. 152 at 20.

> In his closing arguments, Mr. Deal stated:
>
> Don't . . . get me wrong, I don't not feel sympathy for these three people. What they're describing from that witness stand, what they do, what they've done is heartbreaking. It's terrible. They want your sympathy. They want anybody's sympathy, anybody in this courtroom. I feel sympathy for them. I have a daughter. I don't want to hear my daughter on some witness stand describing acts of prostitution. . . . Not leaving Mr. Graham out. You have to judge his credibility when he was on that stand, and you might think that he's a terrible person, and you probably got reason to. That he's immoral, that he's an abusive person in personal relationships, you want to say boyfriend or not. And you might be angry. You might be angry. You might be disgusted, but you can't let anger or disgust cloud your judgement because he's not charged with being immoral, he's not charged with being an abuser in personal relationships.

ECF No. 80 at 57. Petitioner argues that "[t]hese statements were highly prejudicial and no

competent defense attorney in America would say these types of things to the jury about his own

client." ECF No. 152 at 22.

The Court finds that Mr. Deal's recitation of the reasonable doubt standard and negative

statements about Petitioner in his closing remarks did not fall below the constitutional standard.

*Strickland*, 466 U.S. at 689 ("There are countless ways to provide effective assistance in any given

case. Even the best criminal defense attorneys would not defend a particular client in the same

way."). Moreover, Petitioner fails to establish actual prejudice from Mr. Deal's alleged ineffective

assistance—specifically that, absent the error, the results of the trial or appeal would have been

different. *Strickland*, 466 U.S. at 694. Accordingly, this ineffective assistance of trial counsel claim

must be denied.

For all these reasons, Petitioner's ineffective assistance of trial and appellate counsel claims

(Grounds Two and Three, and Motion to Amend) are denied in their entirety.

C.      *Actual Innocence (Ground Four)*

Petitioner claims actual innocence on Count One. Petitioner argues that: (1) his violent acts against G.B. related to his personal relationship, not to sex trafficking; (2) there was insufficient evidence to prove that he used rental cars; (3) the only evidence connecting condoms to interstate commerce was Special Agent Calleri's testimony, which was not subjected to cross-examination; (4) there was insufficient evidence that he posted Backpage.com ads to satisfy the interstate commerce element; and (5) there was insufficient evidence that he used hotels in this district to traffic G.B. ECF No. 152 at 24–36. Respondent argues that only the first of Petitioner's arguments—that his violent acts were not related to sex trafficking—could be construed as arguing actual innocence, all the others go to the legal sufficiency of the evidence. ECF No. 173 at 22–26.

To fit within the actual innocence exception to procedural default, a petitioner must show that it was "more likely than not that no reasonable juror would have convicted him in the light of new evidence or an intervening change in substantive law." *See Schlup v. Delo*, 513 U.S. 298, 327–28 (1995); *Bousley*, 523 U.S. at 623–24. It is well established that "actual innocence means factual innocence, not mere legal insufficiency." *Id*. at 623. As an initial matter, the Court finds that Petitioner has not raised any new evidence or intervening change in law sufficient to support his claim of actual innocence. For example, at trial, Mr. Deal argued that Petitioner's abuse of G.B. related to his personal relationship, not to the alleged sex trafficking. *See* ECF No. 80 at 57.

Moreover, "[a]ctual innocence is not in it of itself a claim for [habeas] relief." *Florez v. United States*, No. 07-CV-4965, 2009 WL 2228121, at *6 (E.D.N.Y. Jul. 24, 2009). "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying . . . . criminal proceeding." *Herrera v. Collins*, 506 U.S. 309, 400 (1993); *accord United States v. Quinones*, 313 F.3d 49, 67 (2d Cir. 2002) (citing *Herrera* and noting that actual innocence has not

been held to provide an independent basis for habeas relief); *Frias v. United States*, Nos. 09-CV-2537, 01-CR-307, 2010 WL 3564866 at *6 (S.D.N.Y. Sept. 13, 2010) ("District courts . . . have repeatedly held that a 'freestanding' claim of actual innocence based on newly discovered evidence, *i.e.*, one unaccompanied by an allegation of some constitutional error, does not provide a basis for habeas relief."); *Edwards v. United States*, No. 05-CV-17, 2005 WL 1522743 at *3 (E.D.N.Y. June 27, 2005) (petitioner's actual innocence claim based on newly discovered evidence is not cognizable under § 2255). The handful of courts in this Circuit that have recognized the possibility of a freestanding actual innocence claim have required an even more exacting standard than for gateway innocence claims. *See, e.g.*, *Sweeney v. Laffin*, No. 12-CV-6483, 2017 WL 4342138, at *7 (S.D.N.Y. Sept. 28, 2017) ("[E]ven if a freestanding actual innocence claim could warrant habeas relief, [p]etitioner has failed to make such a showing because the threshold for any hypothetical freestanding innocence claim [i]s 'extraordinarily high,' and such a showing requires more convincing proof of innocence than the showing of innocence necessary [for a gateway claim]." (internal quotation marks and citations omitted)); *see also Adsit v. Annucci*, No. 16-CV-817, 2018 WL 1175090, at *6 (N.D.N.Y. Jan. 11, 2018) (describing the "extraordinarily high" standard and collecting cases). Thus, even assuming Petitioner's actual innocence claim could be a freestanding claim for habeas relief, Petitioner has failed to meet any such standard.

Finally, to the extent that Petitioner now seeks to challenge the sufficiency of evidence as to his use of rental cars, hotels, Backpage.com ads and his effect on interstate commerce, these issues have been explicitly raised and decided on appeal. ECF No. 173-2 at 4–5. As such, this claim is subject to dismissal. *See Quintieri*, 306 F.3d at 1229; *Cabrera*, 972 F.2d at 23.

## CONCLUSION

For the foregoing reasons, the Motions to Expedite, ECF Nos. 175, 178, 183, 194, are DENIED as moot, the Motion to Amend, ECF No. 189, is GRANTED, the request for a writ of habeas corpus is DENIED, and the Motion to Vacate, ECF Nos. 152, 158-1, 159, is DISMISSED. Because Petitioner has not made "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court DENIES a certificate of appealability. The Clerk of Court is directed to close case number 19-CV-107.

IT IS SO ORDERED.

Dated: July 9, 2021
         Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court